(No. 18359.—Decree affirmed.)
J. W. WANDALL, Appellee, *vs.* JOSEPH BYRNES *et al.*
Appellants.

*Opinion filed December 21, 1927.*

SPECIFIC PERFORMANCE—*what is not ground for refusal to make conveyance.* Where the purchaser in a contract for a conveyance of a lot for $1600 has paid down two-thirds of the purchase price and the contract requires the giving of notes and a trust deed for the remainder thereof, the refusal of the purchaser's wife to sign the notes and trust deed upon the demand of the vendor's attorney is not ground for refusal by the vendor to make the conveyance where the contract does not require her signature, as the wife's signature to a purchase money mortgage is unnecessary; and where the purchaser has always been ready, able and willing to perform his part of the contract while the vendor has failed to tender a title guaranty policy, as required by the contract, the purchaser is entitled to a decree for specific performance.

APPEAL from the Superior Court of Cook county; the Hon. WALTER P. STEFFEN, Judge, presiding.

RODERICK H. O'CONNOR, for appellants.

WALTER A. MURRAY, (LOUIS H. GEIMAN, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

In this case appellee filed a bill against appellant Joseph Byrnes for the specific performance of a contract to convey land. The bill also asked that certain conveyances made after the execution of the contract and after appellee was in possession be set aside, and the parties to whom they were made were named as defendants. The bill alleged the contract between appellee and Byrnes was executed March 31, 1925. It was dated that day but was actually signed April 2. By it Byrnes agreed to convey a lot described therein to appellee for $1600. Appellee paid $419

cash, receipt of which was acknowledged, and on the second day of April, 1925, paid the further sum of $481, making a total of $900 paid on the purchase price, which was agreed to be $1600. The contract provided that appellee pay in addition to the $419, within five days after the title had been examined and found good, the further sum of $1181, provided a good and sufficient warranty deed conveying to him the title should be ready for delivery. The contract then provides the balance to be paid in cash "on or before one year after date, with interest from September 30, 1925, at the rate of six per cent per annum, payable semi-annually, to be secured by notes and mortgage or trust deed, of even date herewith, on said premises, in the form ordinarily used by ........ A guaranty policy from the Chicago Title and Trust Company to be furnished within a reasonable time, with a continuation thereof brought down to this date. In case the title, upon examination, is found materially defective within ten days after said policy is furnished, then, unless the material defects be cured within sixty days after written notice thereof, the said earnest money shall be refunded and this contract shall become inoperative." The contract further provided that if the purchaser failed to perform his contract at the time and in the manner agreed, the earnest money should, at the option of the vendor, be forfeited. Time was made the essence of the contract. The bill alleged that two days before the contract was signed, appellee, by instruction and direction of Byrnes, took open and exclusive possession of the premises and began to improve them by erecting thereon a gasoline station and expended $8600 in the improvement, and has been in actual, open and exclusive possession since April, 1925, and has paid the taxes for 1924 after the property had been forfeited for non-payment. The bill further alleged that on June 8, 1925, Byrnes fraudulently made a warranty deed to said premises to appellant M. L. Chambers, sister-in-law of

Byrnes' attorney, who acted as notary public in taking the acknowledgment of Byrnes to the deed, which deed was recorded June 9, 1925. On the same day Chambers received her deed from Byrnes she made and delivered to appellant Francis J. Freel a trust deed on the property securing notes in the sum of $1000, and the deed was placed on record June 16, 1925. Byrnes' attorney was the notary who took the acknowledgment to the trust deed by Chambers, and the bill alleges the transaction was fraudulent, and, as a part of the conspiracy to defraud appellee, Chambers conveyed by warranty deed the premises to appellant Francis Hauflaire, son of Byrnes' attorney. The bill alleges all the foregoing transactions were part of a conspiracy among the parties to cheat appellee out of his right in the premises; that as between appellee and Byrnes the property was purchased subject to no existing leases and appellee was to pay no rent, but Hauflaire, about September 10, 1925, served notice on appellee to pay $60 a month rent within five days; that appellee ignored the notice, and thereafter Hauflaire, by his father, who was his attorney and who was also attorney for Byrnes, began forcible detainer proceedings against appellee, and because appellee's defenses were equitable, Hauflaire succeeded in getting judgment for possession, and appellee appealed to the circuit court, where the cause is now pending. Because appellee's defenses were equitable and could not be made in a suit at law, the bill prayed the prosecution of the forcible detainer suit be enjoined. The bill further prayed an accounting be taken between appellee and Byrnes as to what may be due on the contract from appellee to Byrnes, and appellee agrees, upon the execution to him of a good and sufficient title, to pay to Byrnes any residue the court may decree due him. The bill avers appellee has been ready and willing at all times to comply with the contract.

The contract for the sale and purchase of the land was recorded by appellee June 12, 1925.

Byrnes answered the bill, admitting the contract of March 31 and that appellee tendered him $540 January 30, 1926; but Byrnes refused the tender and refused to make a deed; admits that his attorney took the acknowledgment of the deed from Byrnes to Chambers and the trust deed from Chambers to Freel, that Hauflaire is the son of Byrnes' attorney, and that Mrs. Chambers is a sister-in-law of his attorney; admits the lot was conveyed by Byrnes to Chambers June 8, 1925, and the subsequent conveyances as averred in the bill; denies that the real estate was vacant and unoccupied at the time the contract was executed; denies appellee took open and exclusive possession and expended $8600 in improving the premises, and denies appellee ever offered to perform the contract according to its terms; avers the contract was ' signed and delivered April 2, 1925, after payment by appellee of an additional sum of $481; avers Byrnes occupied the premises in his business of storing and repairing cars prior to March 29, 1925, and continued to so do until the first day of July, 1925; avers that May 27, 1925, Byrnes prepared, executed and tendered appellee a warranty deed to the premises and requested him to execute notes and trust deed as provided by the contract, but appellee refused to perform as requested, and Byrnes thereupon gave him a written notice of intention to cancel the contract unless he performed the same according to its terms on or before June 3, 1925; that appellee wholly disregarded said notice, and thereafter, on June 8, Byrnes sold the premises to Chambers and received payment therefor; avers Byrnes performed the contract according to its terms until after appellee refused. The answer of Chambers admits the purchase of the lot described; denies appellee was, at the time she (Chambers) purchased it, in open and exclusive possession, and alleges Byrnes was in possession as theretofore; that she, on September 4, 1925, conveyed to Hauflaire and has

no interest in the premises. Hauflaire answered admitting purchase from Chambers, and Freel disclaimed.

June 1, 1925, appellee filed his sworn amended bill by leave of court. Appellants say it is identical in allegations with the original bill, except that the allegation that "on March 29, 1925, said premises were vacant and unoccupied" is omitted, and the date of an alleged verbal agreement to furnish Byrnes with gas, oil, etc., and deduct the price from the balance on the contract of purchase, is alleged to have been May 16, 1925, instead of on or about August 1, 1925. The amended bill also made the unknown holders and owners of the notes secured by the trust deed from Chambers to Freel, parties.

Before answering the original bill the defendants to it demurred generally and specially. The demurrer was overruled and defendants answered. After the amended bill was filed, by order of court the answers of defendants to the original bill were allowed to stand as answers to the amended bill. It does not appear that any objections were made to the filing of the amended bill, though some complaint of that is now made. The cause was tried in open court, briefs were filed with the chancellor, and afterwards the case was argued orally. A decree was entered and signed March 11, 1927, granting the relief prayed in the bill, and defendants have prosecuted this appeal.

The decree is a very lengthy one and recites the facts quite fully. It recites the execution of a contract between the parties April 2, 1925; that the premises were then subject to a mortgage from Byrnes to Freel to secure $100, bearing six per cent interest, dated July 1, 1923, due in one year. It sets out the contract between appellee and Byrnes, and finds appellee paid $481 April 2, 1925, and that he had paid Byrnes earnest money March 15, 1925, in amount of $419, making a total paid on the purchase price of $900. It finds appellee, with the consent of Byrnes, took open and exclusive possession of the premises March 29,

1925, and has so remained in possession from that time, and that he immediately began building thereon a gasoline station and appurtenances; that on May 16, 1925, appellee and Byrnes verbally agreed, at Byrnes' request, that appellee should furnish Byrnes gasoline on credit, and the price was to apply on the balance of the purchase price of the premises, and that from May 20, 1925, to November 13, 1925, appellee furnished Byrnes gas; that appellee began to sell gasoline and oil on the premises May 15, 1925, and has continued since then to do so; that May 28, 1925, Byrnes' attorney, E. J. Hauflaire, called on appellee on the premises with a deed thereto and a trust deed and notes and demanded appellee give him his wife's name and that she sign the trust deed and notes for the balance of the purchase money; that appellee informed the attorney his wife would not sign them, and offered, in addition to the trust deed, personal security on the notes, but the attorney left the premises and the same day wrote appellee referring to his visit and its purpose and that appellee refused to have his wife sign the trust deed and notes; that he informed appellee that unless he and his wife came to the attorney and executed the notes and trust deed by the third of June the contract would be canceled according to its terms. The decree finds there was then existing on the lot a mortgage to Freel to secure $100; that Byrnes had not at any time tendered appellee a guaranty policy, as provided in the contract, and that appellee had not waived his right thereto; that on June 8, 1925, Byrnes' attorney asked him to sign the deed to Chambers; that Byrnes refused three times to do so, and his attorney then told him that if he did not he would not get a cent, and thereupon Byrnes signed the deed; that at the time the deed was executed appellee was in open, notorious and exclusive possession of the premises and was not in default in the performance of any of the terms of the written contract; that the conveyance was illegal, fraudulent and

void and conveyed no title to Chambers; that appellee's possession was notice to all subsequent grantees of Byrnes, Chambers, Freel and Hauflaire of all the legal and equitable rights of appellee in the premises, and that appellants had actual knowledge of the rights and interests of appellee; that the execution of the trust deed by Chambers to secure twenty principal notes of $50 each, payable monthly, was illegal, fraudulent and void; that Byrnes' attorney wrote appellee June 18, 1925, which was ten days after the deed had been made by Byrnes to Chambers. The letter is set out in full, and states, in substance, that the attorney wrote appellee May 28 that if he did not perform the contract for the purchase of the lot it would be canceled according to its terms; that he did not want appellee to be penalized for persistence in refusing to execute notes and trust deed as provided in the contract, and wanted appellee and Byrnes to see him Saturday evening and straighten out the matter; that if appellee did not heed the notice he would advise Byrnes to return the payment made, less damages, "and you will lose the lot." The lot had been conveyed by Byrnes to Chambers ten days when that letter was dated. The consideration expressed in the deed from Chambers to Hauflaire is $1500, subject to trust deed and notes described, 1 and 2 of which had been paid. The decree finds that Hauflaire commenced forcible entry and detainer proceedings against appellee September 16, 1925, before a justice of the peace and obtained judgment for possession; that appellee appealed to the circuit court, where the appeal is still pending; that the forcible entry and detainer suit was instituted and determined before a justice of the peace when appellee was not in default in the performance of any of the terms of the contract and when he was in open, notorious and exclusive possession of the premises and while the written contract was of record; that Byrnes' attorney was the attorney for his son, Francis, in the forcible detainer case but later withdrew as such attorney; that

appellee is entitled to retain possession of the premises and to an injunction restraining Hauflaire from taking any further action for possession of the premises or interfering with appellee's possession thereof; that January 30, 1926, appellee tendered Byrnes $540, the balance of the purchase price, and that Byrnes refused the tender on advice of his attorney; that on May 30, 1926, Byrnes sent for appellee and told him he had found out (evidently referring to the visit of the attorney to appellee on May 28) "it was a fake deed, fake mortgage on there; he never received a cent; they claim they gave me $1500, and they never gave me a cent on that deed that was on there; don't mind them at all; it is a fake deed and a fake mortgage," and told appellee to get him the money and he would sign the deed. On July 12, 1926, the decree finds, Byrnes and appellee appeared at the office of the attorney of appellee and entered into the following escrow agreement:

"It is hereby agreed between Joseph Byrnes, of Harvey, Cook county, Illinois, and J. W. Wandall, of Harvey, Cook county, Illinois, said parties having had an accounting between them in reference to all matters, and particularly in reference to the sale and purchase of the real estate described in the attached deed from said Byrnes to said Wandall, said Wandall not being and not having been in default at any time in the performance of said contract. It is further agreed by and between the parties hereto that the sum of five hundred thirty-four and 55/100 ($534.55) dollars shall be due from said J. W. Wandall to said Joseph Byrnes upon said Joseph Byrnes being in a position to deliver to said Wandall a clear title to the real estate described in the attached deed, and said Byrnes having duly signed and executed the attached warranty deed conveying the property therein described to said J. W. Wandall, as provided for in the contract made and entered into by and between said parties providing for the conveyance of said real estate, said contract being dated March 31, 1925, and said Byrnes deposits said warranty deed with Henry Schinz, as escrowee, to deliver said warranty deed to said Wandall upon said Byrnes being in a position to give a clear title to said real estate, and said Wandall hereby deposits with said Henry Schinz, as escrowee, the sum of five hundred thirty-four and 55/100 ($534.55) dollars, said sum to be paid by said escrowee to said Joseph Byrnes as soon as said Joseph Byrnes shows clear title to the above men-

tioned real etate. It is further agreed by said Joseph Byrnes that a decree may be entered against him by any judge of the superior court of Cook county, Illinois, in the case of J. W. Wandall versus said Joseph Byrnes *et al.*, case No. 433315, now pending in said court, to execute and deliver a warranty deed to said J. W. Wandall in accordance with the terms of the above mentioned contract between the parties hereto.

"Witness the hands and seals of the parties hereto this 12th day of July, A. D. 1926.

JOSEPH BYRNES, (Seal)
J. W. WANDALL. (Seal)

"STATE OF ILLINOIS, } *ss.*
    *County of Cook.* }

"Joseph Byrnes and J. W. Wandall, being first duly sworn, on oath depose and say that they have read the foregoing escrow agreement by them subscribed, and the same is their free and voluntary act, and true of their own knowledge.

JOSEPH BYRNES,
J. W. WANDALL.

"Subscribed and sworn to before me this 12th day of July, A. D. 1926.

HENRY SCHINZ, *Notary Public."*

(Seal.)

The decree finds appellee is entitled to a guaranty policy and a warranty deed from Byrnes in accordance with the terms of the contract, and Byrnes is entitled to $534.55 as the balance of the purchase price; that the accounting between appellee and Byrnes was correct and that the $534.55 was in the possession of the escrowee, and that upon Byrnes delivering, at his own expense, to appellee a good deed and a guaranty policy from the Chicago Title and Trust Company guaranteeing good title to said premises, Byrnes should be entitled to the money and appellee entitled to a warranty deed from Byrnes; that Byrnes is the holder and owner of the alleged trust deed and notes from Chambers to Freel as trustee, and that there are no unknown holders and owners of said deeds and notes; that Byrnes had refused to comply with the terms of the written contract except after the alleged subsequent conveyances; that appellee is entitled to have the contract performed by Byrnes and a conveyance made by

him to appellee of a good title to the premises, and to have Byrnes furnish him a Chicago Title and Trust Company guaranty policy as of the date of the decree, free and clear of all alleged incumbrances; that the deed from Byrnes to Chambers, the trust deed from Chambers to Freel and conveyance from Chambers to Hauflaire be set aside and declared void and be canceled and delivered up to appellee, and that an injunction issue as prayed in the bill.

We have only set out part of the decree, which is very lengthy and seems to us to cover every phase of the case. It appears from a certificate of evidence filed by appellants that the first payment made by appellee was March 14 or 15, which was before the contract was executed and at the time possession was given to appellee. The contract was not actually signed until April 2. The contract between the parties by which appellee was to furnish Byrnes gas, to be paid for by applying its cost on the contract, was made May 16, 1925.

The abstract of the testimony covers 227 pages. There was a dispute between appellee and appellants about what day Byrnes' attorney called on appellee to tender a deed and secure appellee's signature to the notes and trust deed. Appellants claim the date was May 17 and appellee contends it was May 28. The court found the date contended for by appellee was the correct date, and we think the proof justified the finding. A large part of the testimony on various points was conflicting. The decree found, and the finding was justified by the evidence, that appellee took exclusive possession of the lot, with Byrnes' consent, before the contract was actually signed, has remained in such possession ever since, and has erected thereon a gasoline filling station and its appurtenances at a cost of $8600, and has conducted it as a filling station ever since it was completed, some time in May.

Appellants rely upon the refusal of appellee to have his wife sign the notes and trust deed May 28 as a refusal

to perform the contract. The contract did not require her to sign the notes or the trust deed, and as they were for the purchase money, it was unnecessary that she do so to protect Byrnes against any claim on her part if the notes were not paid.

We shall not set out the evidence of the parties, which in many respects was contradictory, but have set out the findings of the decree, which were against appellants and hold that appellee has always been ready, able and willing to perform his part of the contract and has never failed or refused to do so. The decree was justified under the evidence. There was no occasion for any controversy about performing the contract, and we are convinced there would have been none if Byrnes had been allowed freedom of action. The deal was not a large one, and appellee was always willing, able and ready to perform his part of it. The attempt to compel him to have his wife sign the trust deed and notes was unjustified by the contract, and appellee's refusal to have her do so was not a refusal to perform the contract.

We have read the evidence and are satisfied the decree was warranted. Appellee was in possession all the time after he took possession, with the consent of Byrnes, before the contract was signed and began at once the improvement by the erection of a filling station and appurtenances. The claim that Byrnes was also in possession is unfounded.

Complaint is made that the court erred in granting leave to appellee to make amendments and file an amended bill without showing reasons therefor. No objections were made to that being done, and an order was made by the court that the answers to the original bill stand as answers to the bill as amended, and without objections from appellants.

We are unable to see how the escrow agreement of July 12, 1926, between Byrnes and appellee, can be ex-

plained consistently with appellants' position, and find no reason for disturbing the decree.

There are no questions of law involved requiring the citation of authorities. The determination of the case depends upon the facts and the citation of cases would be superfluous, as the law is well settled and familiar to the legal profession.

The decree is affirmed.             *Decree affirmed.*